

# Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00779-CV

**IN THE INTEREST OF K.M.L.H.**, a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-02608
Honorable Janet P. Littlejohn, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:          Catherine Stone, Chief Justice
                 Karen Angelini, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  March 26, 2014

AFFIRMED

Appellant J.G. appeals the trial court's order terminating her parental rights to K.M.L.H, a sixteen-month old child.  J.G. asserts the evidence was not legally or factually sufficient for the trial court to find by clear and convincing evidence that terminating her parental rights was in K.M.L.H.'s best interest.  *See* TEX. FAM. CODE ANN. § 161.001(2) (West 2014).  We conclude the evidence is both legally and factually sufficient, and we affirm the trial court's order.

### BACKGROUND

In June of 2012, J.G. and K.M.L.H. were living with D.H., J.G.'s fiancé and K.M.L.H.'s father.  That month, the Department of Family and Protective Services received a referral alleging domestic violence in J.G. and D.H.'s home.  During the Department's investigation, D.H. tested positive for methamphetamines, but he denied any drug use.  In October of 2012, K.M.L.H. was

removed from D.H. and J.G.'s home based on a Department worker's affidavit averring K.M.L.H. was at risk from (1) the home environment and (2) D.H.'s drug use. After a bench trial on the merits, the trial court terminated D.H.'s and J.G.'s parental rights to K.M.L.H. based on subparagraphs (D) and (O) of Family Code section 161.001(1), *see* TEX. FAM. CODE ANN. § 161.001(1), and because it was in K.M.L.H.'s best interest, *see id.* § 161.001(2). In her appeal,[1] J.G. asserts the evidence is neither legally nor factually sufficient to support the best interest of the child finding. *See id.*

### STANDARDS OF REVIEW

If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that (1) the parent committed one of the grounds for involuntary termination listed in section 161.001(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002).

### A. Legal Sufficiency

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005). If the court "determines [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true," the evidence is legally sufficient. *See In re J.L.*, 163 S.W.3d at 85; *In re J.F.C.*, 96 S.W.3d at 266.

---

[1] D.H. did not appeal the trial court's order.

**B.** **Factual Sufficiency**

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re C.H.*, 89 S.W.3d at 25.

### BASES FOR TERMINATION

J.G. contends the evidence was neither legally nor factually sufficient for the court to find that terminating her parental rights was in K.M.L.H.'s best interest.

The factors a court uses to ascertain the best interest of the child may include the following:

> (A) the desires of the child;
>
> . . .
>
> (C) the emotional and physical danger to the child now and in the future;
>
> (D) the parental abilities of the individuals seeking custody;
>
> . . .
>
> (G) the stability of the home or proposed placement;
>
> (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
>
> (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors). Applying each standard of review, we examine the evidence pertaining to the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(2);[2] *In re E.N.C.*, 384 S.W.3d at 807; *In re J.F.C.*, 96 S.W.3d at 284.

---

[2] To support termination of a parent's rights on subsection (O) grounds, the Department must also prove the child was removed due to abuse or neglect and the child had been in the Department's conservatorship for at least nine months. *In re S.F.*, 32 S.W.3d at 321; *In re A.A.A.*, 265 S.W.3d 507, 515 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). J.G. does not challenge those elements, and we do not address them.

## BEST INTEREST OF THE CHILD

After considering the evidence, a trial court may not terminate the parent's rights unless it finds such "termination is in the best interest of the child." TEX. FAM. CODE ANN. § 161.001(2); *accord In re J.F.C.*, 96 S.W.3d at 261. We review the evidence presented to the trial court in light of the *Holley* factors. *See In re E.N.C.*, 384 S.W.3d at 807 (citing *Holley*, 544 S.W.2d at 371–72).

### A. Evidence of Best Interest of the Child

At trial, the parties examined several witnesses concerning whether terminating J.G.'s parental rights was in K.M.L.H.'s best interest. We recount relevant facts from certain witnesses.

#### 1. *Amanda Bice*

Amanda Bice, a licensed marriage and family therapist, testified on several points. She met with J.G. eighteen or nineteen times from May through October of 2013. She reviewed J.G.'s service plan with her, and discussed J.G.'s previous experiences with Department referrals regarding her former husband and their children. When asked whether J.G. made progress in her counseling, Bice answered no. Bice explained that despite her weekly requests and instructions to do so, J.G. (1) refused to participate in Narcotics Anonymous or any other addiction recovery support group, (2) refused to attend a Parent Informing Parents class, and (3) refused to attend a Parenting Violence Prevention support group.

She warned J.G. "every week" that J.G.'s failure to comply with her service plan could adversely affect her ability to get K.M.L.H. back. She discussed with J.G. that D.H. was angry, resistant to change, and unwilling to admit he needed help to overcome his drug addiction. When Bice advised J.G. she would probably lose K.M.L.H. if she did not separate herself and K.M.L.H. from D.H., J.G. said she was probably going to lose K.M.L.H. anyhow, so she would not separate from D.H.

Bice also opined that D.H. was under the influence during three of their face-to-face meetings; she supported her conclusion by explaining she worked for more than five years with people with drug and alcohol addictions, and she could recognize the indicators. Bice concluded that she believed it was in K.M.L.H.'s best interest for J.G.'s parental rights to be terminated.

### 2.    *J.G.*

J.G. testified, inter alia, about her history with the Department, her relationship with D.H., her service plan compliance, and her love for K.M.L.H.

#### a.    Prior Department Referrals

J.G. admitted she was the subject of Department referrals before K.M.L.H. was born, and three Department investigations after K.M.L.H. was born. She insisted the complaints were baseless, they were about only her children from a previous marriage, and they were made by "a jealous ex who calls CPS a lot."

#### b.    Relationship with D.H.

She testified she has been with D.H. for over three years, but she has never seen him use, or be under the influence of, illegal drugs. She does not believe D.H. has drug abuse or anger management problems. She knows D.H. has been arrested for drug charges at least twice since K.M.L.H. was born, but insisted D.H. does not have a drug problem and K.M.L.H. would be safe with him. When asked if she ever told her counselor she would choose D.H. over K.M.L.H., J.G. answered no.

#### c.    Service Plan Compliance

Regarding her compliance with her service plan, J.G. testified she knew the court ordered her to participate in services, and if she failed to comply with the order, the Department would likely ask the court to terminate her parental rights to K.M.L.H. She knew the court ordered her to attend a drug addiction recovery support group and a family violence prevention course, but she

did not attend because her Department case worker told her she did not have to go. She attended at least eighteen counseling sessions, and during a previous Department case for one of her other children, she completed an eight week parenting class. She scheduled her court-ordered psychiatric evaluation six months before trial, but her appointment was after trial because that was the doctor's first available appointment. She admitted she tested positive for drug use while the case for K.M.L.H. was pending, but denied she was using drugs or had a drug problem. She complained the Department workers were not helping her, but were forcing her to participate in services she had previously completed.

        d.     Love for K.M.L.H.

Finally, J.G. testified she would do anything for K.M.L.H. She worked hard at her job to provide for K.M.L.H., she attended counseling sessions as ordered, and it was in K.M.L.H.'s best interest to be reunited with her and D.H.

        *3.*     *D.H.*

D.H. testified he is the father of four children, each born of different mothers. He has been charged with possession of marijuana six or seven times and convicted three times, and arrested once for possession of a controlled substance. He admitted he was arrested for possession of an illegal knife, harboring a runaway, and unlawfully carrying a weapon. He denied any violent or abusive behavior in any of his previous relationships, but admitted a protective order had been entered against him regarding J.G.'s ex-husband. He insisted his relationship with J.G.'s ex-husband had improved, and the situation was resolved. He explained he missed his court-ordered drug tests because the tests were unreliable, he does not use drugs, and he does not need any help from the Department because he does not have drug abuse or anger management problems. He insisted he loves K.M.L.H., he would do anything for his child, and it is in K.M.L.H.'s best interest to be reunited with him and J.G.

### 4.    *Bianca Ramos*

Bianca Ramos, a Department employee assigned to work with D.H. and J.G., was another witness.  She testified that after K.M.L.H.'s birth, and during the course of an investigation of alleged domestic violence between D.H. and J.G., D.H. tested positive for methamphetamines.  When she went to D.H. and J.G.'s home, she saw many boxes and other items piled high enough to harm a child if they fell over, and saw exposed wiring in the kitchen.  She added she felt it was necessary to seek a court order to remove K.M.L.H. from the home because of the condition of the home, D.H.'s drug use, and his refusal to be tested for drugs.

### 5.    *Cherri Cummings*

Cherri Cummings was the Department's case worker for K.M.L.H.'s case.  She has an undergraduate degree in psychology, a master's degree in human emotions and relationships, and has worked for Oklahoma and Texas in child protective services for forty-three years.

#### a.    D.H.'s Issues, J.G.'s Compliance

In her first meeting with D.H. and J.G., Cummings felt D.H. was under the influence of drugs.  She asked D.H. and J.G. to undergo drug testing, but both refused.  At subsequent weekly meetings, Cummings asked J.G. fourteen times to be drug tested, but each time J.G. refused.  She gave D.H. and J.G. service plans four different times, but each time they refused to sign the plans.  At their weekly meetings, she repeatedly reviewed their plans with them point-by-point, but D.H. and J.G. failed to comply with most of the plan requirements.  When Cummings asked J.G. whether she would separate from D.H. in order to keep K.M.L.H. safe from his anger and drug use, J.G. said no—she would stay with D.H.  D.H. and J.G.'s visits with K.M.L.H. were moved to the Department's offices because D.H. became angry and threatening towards Cummings.

### b.  K.M.L.H.'s Development

When she was removed from D.H. and J.G.'s home, K.M.L.H. initially exhibited delayed language development and "sensory cognitive freezing"—associated with traumatization. K.M.L.H. could stand but was unable to walk more than a few steps. Within ten days of being placed with the foster parents, K.M.L.H. was "running everywhere." Likewise, after being placed in foster care and with subsequent therapy, K.M.L.H. is developmentally current and the "freezing" is decreasing.

### c.  Foster Home

Cummings testified that if D.H.'s and J.G.'s parental rights were terminated, K.M.L.H. would be adopted by the current foster parents. She explained the foster parents are "wonderful," they want to adopt K.M.L.H., and K.M.L.H. is "very, very bonded to them."

### d.  K.M.L.H.'s Best Interest

When asked if she thought J.G. allowed K.M.L.H. to remain in conditions that endangered the child's physical and emotional well-being, Cummings said "Yes, I do." Cummings also expressed her opinion about reuniting K.M.L.H. with J.G.:

> [T]his child would be at great risk. We have a very volatile dad. We have got parents that are in denial about some really high risk factors in the home, extreme anger issues, what appears to be ongoing drug use and I think more than anything, a refusal to ask for help, which we think maybe some improvement could be made.

Cummings testified that terminating J.G.'s parental rights would be in K.M.L.H.'s best interest.

## B.  K.M.L.H.'s Best Interest

The trial court heard testimony that J.G. knew D.H. had drug arrests and convictions since K.M.L.H. was born, she knew what her service plan required her to do to reunite her with K.M.L.H, and yet she chose not to comply with key elements of the plan that were designed to protect K.M.L.H. *See Holley*, 544 S.W.2d at 372 (factors (C), (D)). The court could have believed the

testimony that D.H. was volatile, continuing to use drugs, and unwilling to participate in services designed to help him and J.G. retain their parental rights to K.M.L.H., and was an ongoing danger to K.M.L.H. *See id.* (factors (C), (D), (G), (H)). The court could have believed the testimony that J.G., when presented with the choice to separate herself and K.M.L.H. from D.H. and his behaviors or risk losing her rights to K.M.L.H., J.G. chose to remain with D.H. despite the risks to K.M.L.H. *See id.* (factors (C), (D), (G), (H), (I)). Finally, the court could have believed the foster parents who want to adopt K.M.L.H. would provide a home environment that promoted K.M.L.H.'s physical health and emotional development, and K.M.L.H. has strongly bonded to them. *See id.* (factors (A), (D), (G)).

Reviewing the evidence under the two standards, we conclude that the trial court could have formed a firm belief or conviction that terminating J.G.'s parental rights to K.M.L.H. was in K.M.L.H.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 27. Therefore, we conclude the evidence is legally and factually sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 27.

## CONCLUSION

The trial court found J.G. satisfied at least one statutory condition supporting terminating her parental rights, and such termination was in K.M.L.H.'s best interest. J.G. appealed only the latter finding. Having reviewed the evidence, we conclude it was legally and factually sufficient to support the trial court's finding by clear and convincing evidence that termination of J.G.'s parental rights to K.M.L.H. was in K.M.L.H.'s best interest. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice